**Frank DiRico**
**NON-EXCLUSIVE**
**DISTRIBUTORSHIP AGREEMENT**

***DistributorID FRAUSIN***

This Non-Exclusive Distributorship Agreement ("Agreement") is made as of April 1, 2000 (the "Effective Date"), by and between American Biophysics Corporation, with its principal place of business located at 2240 South County Trail, East Greenwich, Rhode Island 02818, ("Manufacturer") and Frank DiRico with its principal place of business located at 1 South Pelican Drive, Key Largo, FL 33037 USA("Distributor").

Manufacturer desires to appoint Distributor, and Distributor desires to accept appointment, as a distributor of Manufacturer's products as set forth herein.

NOW, THEREFORE, in consideration of the mutual agreements promises set forth herein, the parties agree as follows:

1. **Rights Granted**.
Manufacturer hereby grants to Distributor a non-exclusive right, on the terms and conditions contained below, to purchase, inventory, promote and resell "Manufacturer's Products" (which does not include installation, service or maintenance) as defined herein. Nothing herein shall prevent or prohibit Manufacturer from selling any of Manufacturer's Products within the "Primary Marketing Area", (Exhibit A) directly to the following customers: N/A

2. **Products and Distribution Pricing**.
As used in this Agreement, the term "Manufacturer's Products" (Exhibit B) shall mean the products, related service parts and accessories manufactured and/or sold by Manufacturer and there related discounts as set forth in the attached.

3. **Terms of Sale**.
All sales of Manufacturer's Products to Distributor shall be made pursuant to this Agreement at such prices and on such terms as Manufacturer shall establish from time to time on at least thirty (30) days notice. All prices are FOB Manufacturer's plant. Manufacturer agrees to properly pack all items for shipment. Risk of loss due to damage or destruction of Manufacturer's Products shall be borne by Distributor after delivery to the carrier for shipment. The shipper will be selected by Manufacturer unless Distributor requests a reasonable alternative. All prices and shipments are FOB American Biophysics Corporation, and do not include costs for transportation, insurance, taxes, customs duties, fees or other similar charges paid by Distributor. All orders are subject to acceptance by Manufacturer. Except as otherwise expressly agreed by Manufacturer in advance, this Agreement shall control all aspects of the dealings between Manufacturer and Distributor with respect to the Manufacturer's Products and any additional or different terms in any Distributor order are hereby rejected.

4. **Payment**.
Distributor shall pay all charges due hereunder on a cash in advance basis. Unless other arrangements have been mutually agreed to.

5. **Marketing Policies**.
Distributor will at all times maintain adequate inventories of Manufacturer's Products and will promote vigorously and effectively the sale of Manufacturer's Products through all channels of distribution prevailing in Distributor's "Primary Marketing Area" (attached), in conformity with Manufacturer's established marketing policies and programs. Distributor will use its best efforts to sell Manufacturer's Products to aggressive, reputable, and financially responsible dealers providing satisfactory consumer service throughout Distributor's "Primary Marketing Area".

Distributor will provide high quality promotional, sales and support services in connection with the Product. During the term of this Agreement, Distributor agrees to do the following:

*a)* Distributor will actively promote, sell and maintain the Products, as described in this Agreement. Such promotion, sales and maintenance activities will include, without limitation:
   1) Maintaining a fully trained sales organization capable of active solicitation of such sale of Products;
   2) Handling of all inquiries, quotations and orders for the Products promptly and efficiently;

*b)* Distributor will be responsible for providing Distributor's sales force with "pre-sales" technical support. Distributor will appoint a specific individual who will serve as Distributor's contact to American Biophysics Corporation. This person will act as the primary point of contact between Distributor and American Biophysics Corporation for sales and support issues that cannot be handled by Distributor.

*c)* Distributor will provide American Biophysics Corporation with a rolling 12-month sales forecast each quarter by month for the first six (6) months and by quarter for the last six (6) months. An initial 12-month forecast will be provided to American Biophysics Corporation by Distributor not later than one (1) month after this Agreement is executed. Forecasts will be updated each calendar quarter, no later than the 15th day of the last month of the quarter.

*d)* Distributor will make no representations, guarantees or warranties regarding the performance or functional characteristics of the Products beyond those stated in American Biophysics Corporation's printed literature and brochures, nor make any delivery promises inconsistent with the delivery schedules of American Biophysics Corporation.

*e)* Distributor will not disclose the terms and conditions of the Agreement to any party outside of their organization, other than Distributor's legal council.

*f)* Upon execution of the Agreement, Distributor shall issue a firm purchase order for the Products mutually agreed to by both parties, to be delivered in accordance with the terms therein. Distributor shall maintain a stock of the Products during the term of this Agreement as agreed to with American Biophysics Corporation. In the event that Distributor fails to order and take delivery of Products to maintain stocking requirements, American Biophysics Corporation shall have the option of terminating the Agreement forthwith any liability to American Biophysics Corporation.

During the term of this Agreement Distributor will not enter into, stock or sell products deemed as competitive to American Biophysics Corporation.

6. **Merchandising Policies**.
Manufacturer will provide Distributor with merchandising assistance from time to time in the form of advertising programs, product and sales training and sales promotions. Distributor agrees to fully use such assistance in carrying out Manufacturer's merchandising and sales promotion policies.

7. **Sales Policies**.

*a)* Performance of the Distributor against the agreed to volume discount shall be reviewed by American Biophysics Corporation each 90 days starting from the commencement date of this Agreement. American Biophysics Corporation may adjust Distributor's discount level, as appropriate, based on Distributor's performance during the previous 90 day period. However, American Biophysics Corporation shall not decrease Distributor's discount level unless the projected volume is not achieved for two consecutive review periods.

*b)* Distributor agrees to purchase and take delivery of a minimum of $100,000. worth of American Biophysics Corporation each year from date of execution of Agreement. Distributor further agrees to purchase and take delivery of this minimum product purchase volume in the following quarterly schedule based on the Effective Date of this Agreement:

| | |
|---|---|
| 3 months from Effective Date | 15% |
| 6 months from Effective Date | 30% |
| 9 months from Effective Date | 60% |
| 12 months from Effective Date | 100% |

*c)* Distributor agrees to purchase and take delivery of American Biophysics Corporation Products to be used for stock and demo reasons within thirty (30) days after the Effective Date of this Agreement.

8. **Advertising Policies**.
Manufacturer will cooperate with Distributor and its dealers in providing for continuous and effective advertising and promotion of Manufacturer's Products throughout Distributor's principal marketing area, and Distributor agrees at Distributor's expense to participate in, actively promote and faithfully comply with the terms and conditions of such cooperative advertising and merchandising programs as Manufacturer may establish and offer to Distributor from time to time. Nothing herein shall prevent Distributor from independently advertising and marketing the Manufacturer's Products, provided the form and intent of the advertising or marketing materials are in accordance with Manufacturer's published specifications and installation materials and approved by Manufacturer in advance.

9. **Product Warranty Policies**.
In the event that any of Manufacturer's Products are proved to Manufacturer's satisfaction to have been defective at time of sale to Distributor, Manufacturer will make an appropriate adjustment in the original sales price of such product or, at Manufacturer's election, replace the defective product. Manufacturer shall provide to Distributor information with respect to Manufacturer's limited warranty extended to the original consumer of Manufacturer's Products.
MANUFACTURER MAKES NO WARRANTY TO DISTRIBUTOR WITH RESPECT TO THE PRODUCTS, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANT ABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

10. **Indemnification**.

A. Manufacturer agrees to protect Distributor and hold Distributor harmless from any loss or claim arising out of inherent defects in any of Manufacturer's Products existing at the time such product is sold by Manufacturer to Distributor, provided that Distributor gives Manufacturer immediate notice of any such loss or claim and cooperates fully with Manufacturer in the handling thereof.

B. Distributor agrees to protect Manufacturer and hold Manufacturer harmless from any loss or claim arising out of the negligence of Distributor, Distributor's agents, employees or representatives in the installation, use, sale or servicing of Manufacturer's Products or arising out of any representation or warranty made by Distributor, its agents, employees or representatives with respect to Manufacturer's Products that exceeds Manufacturer's limited warranty. Further, in the event that any of Distributor's dealers shall, with respect to any of Manufacturer's Products purchased from Distributor, fail to discharge the dealer's obligations to the original consumer pursuant to the terms and conditions of Manufacturer's product warranty and consumer service policies, Distributor agrees to discharge promptly such unfulfilled obligations.

11. **<u>Order Processing and Returns</u>**.

A. Manufacturer will employ its best efforts to fill Distributor's orders promptly on acceptance, but reserves the right to allot available inventories among distributors at its discretion.

B. Except for Manufacturer's products that are defective at the time of sales to Distributor, Manufacturer, unless an RMA number is assigned, will not accept any of Manufacturer's Products that are returned. In the event Distributor (i) cancels or reschedules all or part of an order, or (ii) fails to meet any obligation hereunder, causing cancellation or rescheduling of any portion thereof, or (iii) requests a rescheduling of scheduled Product and the request is accepted by Manufacturer. Manufacturer may impose the following:

Cancellation/Rescheduling of Ordered Products – Distributor **will not** cancel any order or portion thereof within thirty (30) days of the date scheduled for shipment. Upon written notice to American Biophysics Corporation, Distributor may cancel any order for Products scheduled for shipment beyond thirty (30) days after American Biophysics Corporation receives Distributor's cancellation notice. Distributor will pay, as a cancellation charge, twenty percent (20%) of the purchase price or $300.00 which ever is greater for **each** canceled Product scheduled for shipment between thirty-one (31) and sixty (60) days from date of receipt by American Biophysics Corporation of Distributor's cancellation notice. Distributor will be liable for any quantity price adjustment resulting from such cancellation.

12. **<u>Financial Policies</u>**.

Distributor acknowledges the importance to Manufacturer of Distributor's sound financial operation and Distributor expressly agrees that it will:

A. Maintain and employ in connection with Distributor's business and operations under this Agreement such working capital and net worth as may be required to enable Distributor properly and fully to carry out and perform all of Distributor's duties, obligations and responsibilities under this Agreement;

B. Pay promptly all amounts due Manufacturer in accordance with terms of sale extended by Manufacturer from time to time;

C. Furnish Manufacturer with financial statements in such form as Manufacturer may reasonably require from time to time for credit purposes; and

D. Furnish, at Manufacturer's request, a detailed reconciliation of Manufacturer's statements of account with Distributor's records, listing all differences, and showing net amount Distributor acknowledges to be due Manufacturer.

In addition to any other right or remedy to which Manufacturer may be entitled, shipments may be suspended at Manufacturer's discretion in the event that Distributor fails to promptly and faithfully discharge each and every obligation in this Section.

13. **Use of Manufacturer's Name**.
Distributor will not use, authorize or permit the use of, the name "Mosquito Magnet™ Pro, Mosquito Magnet™, BioTrap" or any other trademark or trade name owned by Manufacturer as part of its firm, corporate or business name in any way. Distributor shall not contest the right of Manufacturer to exclusive use of any trademark or trade name used or claimed by Manufacturer. Distributor may, subject to Manufacturer's policies regarding reproduction of same, utilize Manufacturer's name, trademarks or logos in advertising on stationery and business cards.

14. **Relationship of the Parties**.
The relationship between Manufacturer and Distributor is that of vendor and vendee. Distributor, its agents and employees shall, under no circumstances, be deemed employees, agents or representative of Manufacturer. Distributor will not modify any of Manufacturer's Products without written permission from Manufacturer. Neither Distributor nor Manufacturer shall have any right to enter into any contract or commitment in the name of, or on behalf of the other, or to bind the other in any respect whatsoever.

15. **Term and Termination**.
The term of this Agreement shall commence on the "Effective Date" as setforth herein and shall continue for a period of one (1) year from this date, and thereafter shall automatically renew from year to year, unless terminated in accordance with the terms of this Agreement.

A. Manufacturer may terminate at any time by written notice given to Distributor not less than thirty (30) days prior to the effective date of such notice in the event Manufacturer decides to terminate all outstanding distributor agreements for Manufacturer's Products and to offer a new or amended form of distributor agreement.

B. Manufacturer may terminate this Agreement upon notice to Distributor, upon any of the following events: (1) failure of Distributor to fulfill or perform any one of the duties, obligations or responsibilities of Distributor in this Agreement, which failure is not cured with 60 days notice from Manufacturer; (2) any assignment or attempted assignment by Distributor of any interest in this agreement or delegation of Distributors obligations without Manufacturer's written consent; (3) any sale, transfer or relinquishment, voluntary or involuntary, by operation of law or otherwise, of any material interest in the direct or indirect ownership or any change in the management of Distributor; (4) failure of Distributor for any reason to function in the ordinary course of business; (5) conviction in a court of competent jurisdiction of Distributor,

or a manager, partner, principal officer or major stockholder of Distributor for any violation of law tending, in Manufacturer's opinion, to affect adversely the operation or business of Distributor or the good name, goodwill, or reputation of Manufacturer, products of Manufacturer, or Distributor; or (6) submission by Distributor to Manufacturer of false or fraudulent reports or statements, including, without limitation, claims for any refund, credit, rebate, incentive, allowance, discount, reimbursement or other payment by Manufacturer; (7) failure to meet the responsibilities of Distributor as defined herein or the minimum purchase requirements as defined in Section 7 of this Agreement; (8) American Biophysics Corporation may immediately cancel this Agreement and the License granted herein in the event that Distributor commits a material breach of this Agreement, including the attached Exhibits, which is not cured by Distributor within 15 days after notice of breach is provided to Distributor by American Biophysics Corporation; (9) American Biophysics Corporation shall only be required (unless mutually agreed) to honor orders placed prior to the effective date of termination, provided scheduled delivery of products is no more than 30 days after termination of this Agreement.

16. **<u>Obligation on Termination</u>**.
On termination of this Agreement, Distributor shall cease to be an authorized distributor of Manufacturer and:

A. All amounts owing by Distributor to Manufacturer shall, notwithstanding prior terms of sale, become immediately due and payable;

B. All unshipped orders shall be cancelled without liability of either party to the other;

C. Distributor will resell and deliver to Manufacturer on demand, free and clear of liens and encumbrances, such of Manufacturer's Products and materials bearing Manufacturer's name as Manufacturer shall elect to repurchase, at a mutually agreed price, but not in excess of Manufacturer's current price to distributors for such products and materials, provided that Manufacturer shall not be obligated to pay Distributor for any item originally provided free of charge; and

D. Neither party shall be liable to the other because of such termination for compensation, reimbursement or damages on account of the loss of prospective profits or anticipated sales, or on account of expenditures, investments, lease or commitments in connection with the business or good will of Manufacturer or Distributor or for any other reason whatsoever growing out of such termination.

17. **<u>Use of Name Prohibited</u>**.
On termination of this Agreement, Distributor will remove and not thereafter use any sign containing any trade name, logo or trademark of Manufacturer including, but not limited to, "Mosquito Magnet™Pro, Mosquito Magnet™, BioTrap", and will immediately destroy all stationery, advertising matter and other printed matter in its possession or under its control containing such name, or any of Manufacturer's trademarks, trade

names or logos. Distributor will not at any time after such termination use or permit any such trademark or logo to be used in any manner in connection with any business conducted by it or in which it may have an interest, or otherwise whatsoever as descriptive of or referring to anything other than merchandise or products of Manufacturer. Regardless of the cause of termination, Distributor will immediately take all appropriate steps to remove and cancel its listings in telephone books, and other directories, and public records, or elsewhere that contain the Manufacturer's name, logo or trademark. If Distributor fails to obtain such removals or cancellations promptly, Manufacturer may make application for such removals or cancellations on behalf of Distributor and in Distributor's name and in such event Distributor will render every assistance.

18. **Acknowledgments**.
Each party acknowledges that no representation or statement, and no understanding or agreement, has been made, or exists, and that in entering into this Agreement each party has not relied on anything done or said or on any presumption in fact or in law, (1) with respect to this Agreement, or to the duration, termination or renewal of this Agreement, or with respect to the relationship between the parties, other than as expressly set forth in this Agreement; or (2) that in any way tends to change or modify the terms, or any of them, of this Agreement or to prevent this Agreement becoming effective; or (3) that in any way affects or relates to the subject matter hereof. Distributor also acknowledges that the terms and conditions of this Agreement, and each of them, are reasonable and fair and equitable.

19. **Compliance with United States Export Laws**.
Distributor acknowledges that the exportation from the United States of Products and related data is subject to compliance with provisions of United States law that restrict exports and re-exports of various commodities and technical data.

Distributor agrees, and shall cause each of its intermediaries, distributors and customers to agree, not to export or re-export, directly or indirectly, any Products, any parts thereof, any direct products thereof or any technical data, unless (i) a validated license, special license or other written permission to do so has first been obtained from the United States Office of Export Administrations and/or other appropriate United States governmental agencies and all conditions of such license or permission have been fully satisfied, or (ii) a general license is available at the time of such export or re-export and all the requirements of such general license have first been fully satisfied.

Distributor agrees and shall cause its intermediaries, distributors and customers to agree, not to distribute or supply any products to any person if (i) such person is listed in the then current Table of Denial Orders, promulgated by the United States Office of Export Administration, or (ii) there is reason to believe that such person intends to deal with such Products in a manner that would result in a violation of the conditions of the general, special, or validated license pursuant to which such Products are exported from the United States.

**20. Modification of Discontinuance of Product by American Biophysics Corporation.**

*a)* American Biophysics Corporation reserves the right to modify the Products as long as form, fit and function are not adversely affected.

*b)* It is understood that new and additional products may be introduced by the Company from time to time. Distributor shall be authorized to solicit orders for sales of such new or additional products only if and when the Company authorized Distributor, in writing, to represent the Company in connection with each such product.

*c)* It is also understood that Products may be deleted from the list of Products which Distributor is authorized to sell. American Biophysics Corporation will provide Distributor with 90 days written notice prior to any discontinuance.

21. **Final Agreement**.
This Agreement terminates and supersedes all prior understandings or agreements on the subject matter hereof. This Agreement may be modified only by a further writing that is duly executed by both parties.

22. **Assignment**.
Neither this Agreement nor any interest in this Agreement may be assigned by Distributor without the prior express written approval of Manufacturer, which may be withheld by Manufacturer at Manufacturer's absolute discretion.

23. **No Implied Waivers**.
Except as expressly provided in this Agreement, waiver by either party, or failure by either party to claim a default, of any provision of this Agreement shall not be a waiver of any default or subsequent default.

24. **Notices**.
Any notice required by this Agreement or given in connection with it, shall be in writing and shall be given to the appropriate party by personal delivery or by certified mail, postage prepaid, or recognized overnight delivery services;

If to Manufacturer:

American Biophysics Corporation
2240 South County Trail
East Greenwich, Rhode Island 02818
USA

If to Distributor:

Frank DiRico
1 South Pelican Drive
Key Largo, FL 33037
USA

25. **Governing Law**.
This Agreement shall be construed and enforced in accordance with the laws of the state of Rhode Island.

26. **Severability**.
If any term of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included.

27. **Headings**.
Headings used in this Agreement are provided for convenience only and shall not be used to construe meaning or intent.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

Raymond Iannetta April 1, 2000
CEO
American Biophysics Corporation
2240 South County Trail
East Greenwich, RI 02818
USA

Frank DiRico April 1, 2000
Owner
Frank DiRico
1 South Pelican Drive,
Key Largo, FL 33037
USA

# NON-EXCLUSIVE DISTRIBUTOR AGREEMENT
## Frank DiRico

## Exhibit A
## "Primary Marketing Area"

**Distributor # FRAUSIN**
**April 1, 2000**

The primary marketing area will include: Greater Miami and the Florida Keys

# Non Exclusive Distributor Agreement
## Frank DiRico
## Exhibit B
## "Manufacturer's Products"

In US Dollars
Distributor ID FRAUSIN
April 1, 2000

| | MM | Octenol | LP Tank | Tank Cover | Nets | Shipping |
|---|---|---|---|---|---|---|
| Distributor Price | $795.00 | $18.00 per 6 pack | $30.00 | $9.00 ea. | $20.00 per 6 pack | Actual Cost |
| | | | | | | |
| Suggested Retail | $1295.00 | $27.00 /6 pk. ($5.00 ea.) | $30.00 | $12.50 ea. | $33.00/6pk ($6.50 ea.) | $50.00/unit |

**Terms: Payment in Advance**